UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-23310-KMW

YOANDRY DE LA ROSA,
BENJAMIN FELIZ MATEO, and
MAXIMO GUTIERREZ,

      Plaintiffs,

vs.

SETAI HOTEL ACQUISITION LLC,

      Defendant.

_____/

**DEFENDANT, SETAI HOTEL ACQUISITION LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Setai Hotel Acquisition LLC ("Setai"), by and through the undersigned counsel, hereby files this Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and states the following:

**I.
INTRODUCTION**

This case arises out of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Fair Labor Standards Act ("FLSA").

The Setai operates a condominium residence and hotel located at 2001 Collins Avenue, Miami Beach, Florida 33139 (the "Property"). Plaintiffs, Yoandry De La Rosa ("De La Rosa"), Benjamin Feliz Mateo ("Mateo"), and Maximo Gutierrez ("Gutierrez") (collectively, "Plaintiffs"), worked for the Setai as valets.

Plaintiffs each assert disparate treatment and hostile work environment discrimination claims under Section 1981, alleging that they were discriminated against based upon their race (Hispanic) by certain Haitian employees of the Setai. In addition, Mateo alleges a disparate

treatment and hostile work environment discrimination claim under Title VII, alleging that he was discriminated against based also upon his perceived sexual orientation. Plaintiffs also claim that the Setai permitted purported "managers and supervisors" to participate in the valets' tip pool, in violation of the FLSA.

As discussed below, Plaintiffs' disparate treatment discrimination claims should be dismissed as Plaintiffs have failed to allege that they suffered any adverse employment action. So too should Plaintiffs' hostile work environment claims, as those claims are nothing more than Plaintiffs' deficient disparate treatment claims improperly repackaged as hostile work environment claims. With regard to their FLSA claims, Plaintiffs cursorily allege that certain Setai employees were "managers and supervisors" who participated in the valets' tip pool, but Plaintiffs fail to include the requisite allegations establishing that those individuals were, in fact, "managers" or "supervisors" under the FLSA; accordingly, those claims should also be dismissed.

## II.
## MEMORANDUM OF LAW

### A.
### Standard on a Motion to Dismiss

In a complaint, a plaintiff must plead "(1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff is obligated to provide the "grounds" of plaintiff's "entitle[ment] to relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The *Twombly/Iqbal* standard requires a pleading to contain sufficient factual allegations to show a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). *Twombly/Iqbal* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail to indicate that the plaintiff has a substantial case." *Id.* In determining "plausibility", the court may disregard conclusory allegations even if they are alleged in the form of factual allegations. *Twombly*, 127 S. Ct. at 1950. Further, although for the purposes of a motion to dismiss a court must take all factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Id.* at 1965. Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 682).

### B.
### Legal Argument

#### 1.
#### Plaintiffs' Disparate Treatment Discrimination Claims

##### a.
##### The Pleading Requirements

To state a claim for disparate treatment discrimination under Title VII, a plaintiff must allege that: "(1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably." *Williams v. Mizkan Holdings Co. Ltd.*, 2019 WL 13272285, *10 (M.D. Fla. 2019) (citing *Vessels v. Atlanta Independent School Sys.*, 408 F.3d 763, 768 (11th Cir. 2005)).

As "[t]he elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim," courts analyze "claims under Title VII [] and § 1981 together . . . ." *Eliassaint v. RTG Furniture Corp.*, 551 F.Supp.3d 1293, 1302 (M.D. Fla. 2021) (citing *Fuller v. Edwin B. Stimpson Co.*, 598 F. App'x 652, 653 (11th Cir. 2015); *Harrison v. Belk, Inc.*, 748 F. App'x 936, 941 (11th Cir. 2018)). "Claims of race discrimination under both Title VII and § 1981 require a showing that the employer subjected the employee to an 'adverse employment action.'" *Davis. v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1265-66 (11th Cir. 2021).

An adverse employment action "results in a serious and material change in the terms, conditions, or privileges of employment." *Barrow v. Georgia Pacific Corp.,* 144 F.App'x 54, 59 (11th Cir. 2005) (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.2001)). "The employee's subjective view of the significance and adversity of the employer's act is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

### b. Plaintiffs Fail to Allege Any Adverse Employment Action

As the bases of their respective race[1] discrimination claims under §1981, each of the Plaintiffs allege that the Setai:

- "unlawfully retained tips earned by the Plaintiffs," claiming that certain non-Hispanic managers and supervisors retained their tips but "did not retain the tips extended to non-Hispanic valets;"

---

[1] In addition to his race race, Mateo also bases his Section 1981 discrimination claim on his color as "a dark-skinned person . . . ." [D.E. #1, ¶133].

- also with regard to tips, "gave preferential treatment to Plaintiffs' non-Hispanic co-workers in the assignment of vehicle retrievals," including "deliberately send[ing] Plaintiffs to retrieve the wrong car in an effort to divert tips to non-Hispanic employees;"

- "denied Plaintiffs the same employment privileges afforded to their non-Hispanic co-workers," by, to wit, a) "permit[ing] non-Hispanic valets to show up late to work or call out of work as often as they liked without being subject to discipline;" b) "allow[ing] Black Haitian valets . . . to enter the valet office and stay there for as long as they wanted;" c) not allowing Plaintiffs "to use the service elevators even though non-Hispanic valets were allowed to use them," and, d) permitting non-Hispanic employees to take hour-long (or longer) breaks while either limiting Plaintiffs' breaks to ten (10) minutes or prohibiting them from taking breaks;

- "assigned a more burdensome workload to Plaintiffs;" and,

- "subjected Plaintiffs to harsh scrutiny and criticism," including "rush[ing] and badger[ing] them to complete [a vehicle] retrieval."

[D.E. #1, ¶¶ 25, 39, 44, 45, 55, 56, 58-64].

Plaintiffs further allege that:

- as to Gutierrez, on one occasion Valet Manager Edson Belfond ("Belfond") "shoved him;" and

- as to Mateo, a) a bellman derogatorily referred to him (based upon his dark-skinned complexion) as "negro," and b) that bellman and two (2) other bellmen made comments about his sexual orientation, referring to him as "gay" and "maricon," and

> spread false rumors that he was engaged in a sexual relationship with a male resident of the Property.

*Id.* at ¶¶ 69, 73-77.

Based upon the above-alleged conduct, Plaintiffs allege that they were each constructively discharged. *Id.* at ¶¶89-91.

### i.
### Tips

"Although the denial of a monetary bonus (like a tip) may constitute an adverse employment action, the potential tips at issue [cannot be] of *de minimis* amount, the deprivation of which cannot rise to the level of an adverse employment action." *Arafi v. Mandarin Oriental*, 867 F.Supp.2d 66, 72 (D.D.C. 2012) (dismissing disparate treatment claims as "the court cannot conclude that [the] loss of potential tips [at issue] amounts to a materially adverse employment action); *see also Dickerson v. SecTek, Inc.*, 238 F.Supp.2d 66, 76 n.4 (D.D.C. 2002) (concluding that the difference between one day's pay and one day's overtime pay "could well be described as a *de minimis* loss of pay" and, therefore, not actionable under Title VII); *Chin Tuan v. Flatrate Moving Network LLC*, 2020 WL 4606318, *4 (S.D.N.Y. 2020) ("Consistently assigning an individual solely to jobs where he would receive lower or no tips may constitute an adverse employment action. . . . But a review of the specific allegations in the Complaint as to Plaintiff's assignments and hours during the eight days he worked shows that any denial of overtime or lucrative assignments was sporadic rather than consistent and therefore does not constitute an adverse employment action."); *cf. Rowe v. Jagdamba, Inc.*, 302 F. App'x 59, 62 (2d Cir. 2008) ("We assume, without here deciding, that [in] . . . a profession where wage is determined almost solely by tips, the consistent decision to place the plaintiff in a section with fewer customers than anywhere else could amount to a decreased wage,

and, if combined with other disadvantages, could rise to the level of an adverse employment action.").

In their Complaint, Plaintiffs fail to allege any facts indicating that the claimed retained or diverted tips were anything other than *de minimis*. Plaintiffs do not (and cannot) allege that their compensation was "determined almost solely by tips" or any other facts indicating that the claimed tips were material. *Rowe v. Jagdamba, Inc.*, 302 F. App'x at 62. Plaintiffs merely allege that they were paid, "an hourly rate, plus tips;" Plaintiffs fail to allege their hourly rate or the amount of their compensation that was comprised of tips. [D.E. #1, ¶36].

Further undermining the notion that the subject tips were "material," Plaintiffs' employment with the Setai was brief: 1) Gutierrez was employed for less than two (2) months; 2) De La Rosa was employed for less than eight (8) months; and, 3) Mateo was employed for approximately eleven (11) months. *Id.* at ¶¶19-21, 89-91.

In light of the foregoing, the claimed retention or diversion of tips do not constitute an adverse employment action.

## ii.
## Breaks

Regarding Plaintiffs' allegations that their breaks were either limited or that they were prohibited from taking breaks altogether, "[m]any courts have held that denial of a break period is not sufficiently material to constitute an adverse [employment] action." *Carter v. Donahue*, 2015 WL 2024844, *5 (M.D. Fla. 2015) (citing *Grimsely v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (holding that employee did not suffer adverse employment action when supervisor increased workload, assigned him additional tasks and denied him breaks while allowing employees outside of protected class to take breaks); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d

473, 486 (5th Cir. 2008) (holding that having some break requests denied by a supervisor 'amount[s] to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time." (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U,S. 53, 68 (2006))). Accordingly, any alleged restriction or prohibition of breaks also fails to allege an adverse employment action required to support Plaintiffs' disparate treatment discrimination claims.

### iii.
### The Other Alleged Discriminatory Acts

Plaintiffs allege that they were assigned a "more burdensome workload." [D.E. #1, ¶58]. That allegation, however, does not rise to the level of an adverse employment action. *See Grimsley*, 284 Fed.Appx. at 609 ("Although [plaintiff's] workload sometimes increased and he was occasionally assigned additional tasks, these kinds of temporary assignments, without a change in compensation or position, do not amount to a 'serious and material change in the terms, conditions, or privileges of employment.'").

The same is true as to Plaintiffs' allegation that they were subjected to "harsh scrutiny and criticism." *See Harbuck v. Teets,* 152 F. App'x 846, 848 (11th Cir. 2005) (holding that Plaintiff's allegation that she was "subject to heightened scrutiny" did not "constitute an adverse employment action or a hostile working environment"); *see also Cochran v. Southern Co.*, 2015 WL 3508018, *2, n.5 (S.D. Ala. 2015) (noting that allegations regarding work being unduly scrutinized and criticized "are generally held legally inadequate to constitute a materially adverse action"); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) (noting that courts generally find "that criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit"); *Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 371 (S.D.N.Y.2005) ("[B]eing yelled at, receiving unfair criticism,

receiving unfavorable schedules or work assignments ... do not rise to the level of adverse employment actions ... because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.") (quotation omitted).

Similarly, Plaintiffs' allegation that they were not permitted to call out of work or show up late fails to allege an adverse employment action. *See Butler v. Alabama Dep't of Transportation*, 536 F.3d 1209, 1215-16 (11th Cir. 2008) ("Requiring an employee to perform [their] job is not a change in the terms, conditions, or privileges of [their] employment. Similarly, the work day started at 7:00 a.m., so requiring [plaintiff] to be present for work at that time was also not an adverse employment action.").

Plaintiffs also allege that Belfond: 1) "allowed Black Haitian valets . . . to enter the valet office and stay there for as long as they wanted. . . . Plaintiffs, on the other hand, were not allowed to enter the valet office because they were Hispanic;" and, 2) did not allow Plaintiffs "to use the service elevators even though non-Hispanic valets were allowed to use them." [D.E. #1, ¶¶60-62, 64]. Those allegations fail to salvage Plaintiffs' deficient discrimination claims as they are based upon nothing more than "[e]veryday workplace grievances." *See Sealy v. State Univ. of New York At Stony Brook*, 408 F.Supp.3d 218, 226 (E.D.N.Y. 2019) (dismissing Title VII discrimination claim based on allegations that, *inter alia*, defendant transferred plaintiff to a more remote work location, denied plaintiff a key to supply room, required Plaintiff to wait 45 minutes to access the supply room, assigned plaintiff a vehicle that was frequently in the shop, and denied plaintiff new tools, finding that these allegations comprised "[e]veryday workplace grievances, disappointments, and setbacks [that] do not constitute adverse employment actions within the meaning of Title VII.") (citing *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010)).

Gutierrez further alleges that on one occasion Belfond "shoved" him.  [D.E. #1, ¶¶ 69-71]. This allegation too fails to plead an adverse employment action.  *See McNichols v. Miami-Dade County*, 2006 WL 1104336, *11 (S.D. Fla. 2006) (finding that plaintiff's allegation that she was pushed "do[es] not establish adverse employment action.") (citing *Landgraf v. USI Film Prods*., 968 F.2d 427, 431 (5th Cir. 1992) (finding that hostility from co-workers and anxiety resulting from stolen tools do not constitute adverse employment actions); *Smiley v. Jekyll Island State Park Auth.*, 12 F.Supp.2d 1377, 1382 (S.D. Ga. 1998) (finding that being slapped and verbally abused by a supervisor is not an adverse employment action)).

Mateo attempts to support his discrimination claims with the additional allegations that bellmen: 1) referred to him using derogatory terms based upon his dark-skinned complexion and his sexual orientation; and, 2) spread false rumors that he was engaged in a sexual relationship with a male resident of the Property.  [D.E. #1, ¶¶ 73-77].  Those allegations, however, also fail to establish any claimed adverse employment action.  *See Freeman v. Oakland Unified School Dist.*, 1998 WL 310758, *3 (N.D. Cal. 1998) ("[T]he use of the epithet [i]s not an adverse employment action."); *see also Robinson v. Our Lady of the Lake Regional Medical Center, Inc.*, 535 Fed.Appx. 348, 352 (5th Cir. 2013) (finding that use of a racial epithet in describing a coworker was not a materially adverse employment action); *Chin Tuan*, 2020 WL 4606318 at *2, 5 (finding that "co-workers calling [plaintiff, of Asian national origin] 'Chino' ["which Plaintiff understands to mean 'Chinese person'"] [and] sp[eaking] his name in a sarcastic tone . . . [did not] constitute[] an adverse employment action because the conduct did not cause 'materially adverse change in the terms and conditions of employment.'"); *Boyd v. Presbyterian Hosp. in City of N.Y*., 160 F.Supp.2d 522, 537 (S.D.N.Y.2001) ("The 'gossips' Plaintiff cites likewise are not adverse employment actions.").

### iv.
### Plaintiffs Fail to Sufficiently Allege That They Were Constructive Discharged

To allege a constructive discharge, a plaintiff must allege that their "working conditions were so intolerable that a reasonable person in [their] position would have been compelled to resign." *Moore v. San Carlos Park Fire Protection & Rescue*, 2018 WL 3931853, *5 (S.D. Fla. 2018) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)). "Working conditions" include an employee's salary, location or duties. *See Patrick v. City of Port St. Lucie*, 2007 WL 9702580, *4 (S.D. Fla. 2007); *see also See U.S. Equal Employment Opportunity Commission v. Nice Systems, Inc.*, 2021 WL 9950751, *5-6 (S.D. Fla. 2021) (An "extreme cut in pay" or "significant loss of potential earnings" can create conditions "so intolerable" that a constructive discharge results).

The threshold to establish a constructive discharge is "quite high," and "courts do not consider the plaintiff's subjective feelings." *Moore*, 2018 WL 3931853 at *5. To establish a constructive discharge, a plaintiff must "show an even greater severity or pervasiveness of harassing conduct than the minimum required for a hostile work environment." *Johnson v. Bottling Group, LLC*, 2022 WL 4374600, *6 (M.D. Fla. 2022).

Plaintiffs base their constructive discharge allegation upon the alleged discriminatory actions discussed above. [D.E. #1, ¶¶88-91]. For the same reasons as discussed above, the allegations of the Complaint fail to allege that any of those claimed discriminatory actions "extreme[ly]" or "significant[ly]" (if at all) affected Plaintiffs' salary, location or duties. Moreover, as Plaintiffs have not satisfied the lower threshold required to allege a claim for hostile work environment (as they have done nothing more than impermissibly relabel their disparate treatment discrimination claims

as hostile work environment claims, discussed below), they have failed to satisfy the higher threshold required to allege a constructive discharge.

## 2.
## Plaintiffs' Hostile Work Environment Claims

### a.
### The Pleading Requirements

To state a claim of hostile work environment under Title VII and §1981, a plaintiff must allege: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." *Thompson v. City of Miami Beach, Fla.*, 990 F.Supp.2d 1335, 1339 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002)).

Regarding the fourth requirement - harassment that is "sufficiently severe or pervasive to alter the terms and conditions of employment" – the Eleventh Circuit has elucidated as follows:

> To be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. In evaluating the objective severity of the alleged hostile work environment, we consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. But Title VII is not a general civility code; ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing cannot form the basis of a claim for actionable harassment or hostile work environment. Instead, conduct must be extreme to amount to a change in terms and conditions of employment. Title VII is not a shield against harsh treatment in the workplace; personal animosity is not the equivalent of [race] discrimination.

*Short v. Immokalee Water & Sewer District*, 165 F.Supp.3d 1129, 1141-42 (M.D. Fla. 2016) (citing *Corbett v. Beseler*, 635 Fed.Appx. 809, 816, 2015 WL 9583808, *6 (11th Cir. 2015)).

Although, as is the case herein, claims for hostile work environment are often made in tandem with claims for disparate treatment discrimination, "alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim[]." *Kilby-Robb v. Spellings*, 522 F.Supp.2d 148, 164 (D. D.C. 2007); *see also Parker v. State, Dep't of Public Safety*, 11 F.Supp.2d 467, 475 (D.Del.1998) (stating that "the dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.").

### b. Plaintiffs' Hostile Work Environment Claims Are Improper Repackaged Disparate Treatment Claims

Plaintiffs' Complaint is very clear that their hostile work environment claims are simply regurgitations of their disparate treatment claims. The alleged acts upon which Plaintiffs' hostile work environment claims are are based are **exactly the same** as those upon which their disparate treatment discrimination claims are based [D.E. #1, ¶¶ 109, 122, 136, 149, 164, 177, 191, 204]. Accordingly, Plaintiffs' hostile work environment claims should be dismissed.

### 3. Plaintiffs' FLSA Claims

### a. The Applicable FLSA Requirements

Section 203(m)(2)(B) of the FLSA provides that, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C.

§203(m)(2)(B). The Department of Labor ("DoL") regulations, which courts utilize in interpreting the FLSA, define a "manager" or "supervisor" as an employee: 1) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" 2) "[w]ho customarily and regularly directs the work of two or more other employees;" and, 3) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. §541.100(a)(2)-(4); *see also Hoffman v. Bear Chase Brewing Co.*, LLC, 2023 WL 384293, *7 (E.D. Va. 2023) ("Which employees constitute managers or supervisors [under the FLSA] is determined by their work duties [under the DoL regulations] and not their job title.").

### b. Plaintiffs Fail to Sufficiently Allege that "Managers" or "Supervisors" Participated in the Tip Pool

In their Complaint, Plaintiffs allege that certain Setai employees improperly participated in the valets' tip pool, including: 1) Belfond; 2) an employee who Plaintiffs cursorily identify as a manager or supervisor but indicate was a "Cashier" (*i.e.*, Natasha Pierre ("Pierre")); and, 3) "Ramp Supervisors," a term not defined in the Complaint[2]. [D.E. #1, ¶¶ 37, 38].

Regarding Belfond, Plaintiffs allege that he: 1) "asserted supervisory authority over Plaintiffs, including the power to hire, fire, demote, and/or promote Plaintiffs;" and, 2) "asserted supervisory authority over all Setai valet runners and had operational control over all Setai valet runners." *Id.* at ¶¶ 26 27. Plaintiffs, however, fail to allege that Belfond's "primary duty is

---

[2] In addition to Belfond, Plaintiffs identify as managers or supervisors Alexis Freud, Joseph Clotaire, and Ronald Orisma, although it is not clear whether these alleged managers or supervisors are the "Ramp Supervisors" referenced in the Complaint. [D.E. #1, ¶38].

management . . . ." *See Hoffman,* 2023 WL 384283 at 9 ("[T]he DOL's regulations . . . defin[e] 'primary duty' as 'the principal, main, major or most important duty that the employee performs,'" noting the defendant's argument that Bar Managers' "primary duty" was to serve customers). In fact, the Complaint indicates that Belfond performed non-management duties serving customers, alleging that he retrieved vehicles. [D.E. #1, ¶43]. As Plaintiffs have failed to sufficiently allege that Belfond is a "manager" or "supervisor" under the FLSA, their FLSA claims should be dismissed to the extent that they are based upon Belfond's alleged participation in the tip pool.

With regard to Pierre and the "Ramp Supervisors," Plaintiffs allege nothing more than their job titles. Plaintiffs do not even attempt to allege that any of these employees: 1) have the "primary duty [of the] management of the [Setai];" 2) "customarily and regularly direct[] the work of two or more other employees;" or, 3) "ha[ve] the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. §541.100(a)(2)-(4). Simply alleging a job title is insufficient. *See Hoffman*, 2023 WL 384293 at *7.

As Plaintiffs do not (and cannot) allege that the Setai took a tip credit towards their wages, Plaintiffs cannot maintain their FLSA claims against the Setai based upon the aforementioned employees' alleged participation in the tip pool absent sufficient allegations that those employees were "mangers" or "supervisors" under the FLSA. *See* 29 C.F.R. §531.54(d) ("An employer that pays its tipped employees the full minimum wage and does not take a tip credit may impose a tip pooling arrangement that includes . . . employees in the establishment who are not employed in an occupation in which employees customarily and regularly receive tips.").

In light of the foregoing, Plaintiffs' FLSA claims should be dismissed to the extent[3] that they are based upon Plaintiffs' insufficient allegations regarding Belfond, Pierre, and the Ramp Supervisors.

**WHEREFORE,** Defendant, Setai Hotel Acquisition LLC, respectfully requests that the Court enter its Order dismissing Plaintiffs' Complaint and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:   *s/ Eric R. Thompson*
Robin Taylor Symons
Rsymons@grm.com
Florida Bar No.: 356832
Eric R. Thompson
Ethompson@gordonrees.com
Florida Bar No. 888931
**GORDON REES**
**SCULLY MANSUKHANI**
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, FL  33131
Telephone: (305) 428-5300
Facsimile:  (877) 644-6209
*Attorneys for Defendant Setai*
*Hotel Acquisition LLC*

---

[3] As a purported basis of their FLSA claims, Plaintiffs also allege that the Setai "directly retained all credit card tips paid to Plaintiffs . . . ." [D.E. #1, ¶¶ 46-48].  Although the Setai disputes that allegation, the Setai is not seeking to dismiss the FLSA claims to the extent that they are based upon that allegation.

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys identified on the following Service List.

    *s/ Eric R. Thompson*
Eric R. Thompson, FBN 888931

**Service List**
Kyle T. MacDonald, Esq.
Kyle@dereksmithlaw.com
DEREK SMITH LAW GROUP, PLLC
701 Brickell Ave., Suite 1310
Miami, FL 33131
*Attorneys for Plaintiff*