UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-23310-KMW

YOANDRY DE LA ROSA,
BENJAMIN FELIZ MATEO, and
MAXIMO GUTIERREZ,

      Plaintiffs,

vs.

SETAI HOTEL ACQUISITION LLC,

      Defendant.

_____/

**DEFENDANT, SETAI HOTEL ACQUISITION LLC'S
MOTION TO DISMISS COUNTS I THROUGH III AND V
THROUGH VIII OF PLAINTIFFS' AMENDED COMPLAINT**

Defendant, Setai Hotel Acquisition LLC (the "Setai"), by and through the undersigned

counsel, hereby files this Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), as to Counts I

through III and V through VIII of Plaintiffs, Yoandry De La Rosa ("De La Rosa"), Benjamin Feliz

Mateo ("Mateo"), and Maximo Gutierrez's ("Gutierrez") (collectively, "Plaintiffs") Amended

Complaint [D.E. #11], and states the following:

**I.
INTRODUCTION**

This case arises out of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil

Rights Act of 1964 ("Title VII"), and the Fair Labor Standards Act ("FLSA") and Plaintiffs' work

as valets at a condominium residence and hotel operated by the Setai, which is located at 2001

Collins Avenue, Miami Beach, Florida 33139 (the "Property").

As discussed in the Setai's Motion to Dismiss Plaintiffs' original Complaint [D.E. #10],

Plaintiffs' disparate treatment discrimination claims (as asserted therein) failed as a matter of law

as Plaintiffs failed to sufficiently allege that they suffered any adverse employment action.  Those claims as asserted in the Amended Complaint (Counts I, III, V, and VII) fare no better. Although Plaintiffs have attempted - in response to the Setai's prior Motion to Dismiss - to remedy those claims by amending their allegation of lost tips to claim that they lost "thousands of dollars in tips per week," "the court [still] cannot conclude that [the] loss of potential tips [from the alleged discriminatory conduct] amounts to a materially adverse employment action." *Arafi v. Mandarin Oriental*, 867 F.Supp.2d 66, 72 (D.D.C. 2012).  More particularly, Plaintiffs' Amended Complaint fails to distinguish between the tips that they claim to have lost based upon: 1) the alleged discriminatory conduct, which they claim applied only to them as Hispanic valets; and, 2) the alleged violations of the FLSA, which they claim applied to **all valets** regardless of race or any other protected characteristic.

De La Rosa and Gutierrez also continue to assert legally insufficient hostile work environment discrimination claims under Section 1981 (Counts II and VI). As they were in Plaintiffs' original Complaint, those claims are largely their deficient disparate treatment claims improperly repackaged as hostile work environment claims.  In an attempt to create a distinction between those claims, De La Rosa and Gutierrez have removed an allegation of alleged discriminatory conduct (*i.e.*, alleged "harsher scrutiny and discipline" than non-Hispanic employees) from their disparate treatment claims while maintaining that allegation in their hostile work environment claims.  [D.E. #11, ¶¶116, 129, 171, 184].  Gutierrez has also removed from his disparate treatment discrimination claim (and maintained in his hostile work environment claim) his allegation that, on **one** occasion, his supervisor "pushed" him.  *Id.* at ¶¶76, 171, 184.  Those differences, however, are legally insufficient and fail to salvage De La Rosa and Gutierrez's hostile work environment claims.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

Finally, Mateo's Title VII disparate treatment discrimination claim (Count VII) and hostile work environment claim (Count VIII), based upon Mateo's perceived sexual orientation, do not even attempt to distinguish themselves from each other and, instead, are improperly based upon the **exact same** alleged discriminatory conduct. *Id.* at ¶¶198, 211.

## II.
## MEMORANDUM OF LAW

### A.
### Standard on a Motion to Dismiss

In a complaint, a plaintiff must plead "(1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff is obligated to provide the "grounds" of plaintiff's "entitle[ment] to relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The *Twombly/Iqbal* standard requires a pleading to contain sufficient factual allegations to show a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). *Twombly/Iqbal* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail to indicate that the plaintiff has a substantial case." *Id.* In determining "plausibility", the court may disregard conclusory allegations even if they are alleged in the form of factual allegations. *Twombly*, 127 S. Ct. at 1950. Further, although for the purposes of a motion to dismiss a court must take all factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1965.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 682).

**B.**
**Legal Argument**

**1.**
**Plaintiffs' Disparate Treatment Discrimination Claims**

**a.**
**The Pleading Requirements**

To state a claim for disparate treatment discrimination under Title VII, a plaintiff must allege that: "(1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably." *Williams v. Mizkan Holdings Co. Ltd.*, 2019 WL 13272285, *10 (M.D. Fla. 2019) (citing *Vessels v. Atlanta Independent School Sys.*, 408 F.3d 763, 768 (11th Cir. 2005)).

As "[t]he elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim," courts analyze "claims under Title VII [] and § 1981 together . . . ." *Eliassaint v. RTG Furniture Corp.*, 551 F.Supp.3d 1293, 1302 (M.D. Fla. 2021) (citing *Fuller v. Edwin B. Stimpson Co.*, 598 F. App'x 652, 653 (11th Cir. 2015); *Harrison v. Belk, Inc.*, 748 F. App'x 936, 941 (11th Cir. 2018)). "Claims of race discrimination under both Title VII and § 1981 require a showing that the employer subjected the employee to an 'adverse employment action.'" *Davis. v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1265-66 (11th Cir. 2021).

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

An adverse employment action "results in a serious and material change in the terms, conditions, or privileges of employment." *Barrow v. Georgia Pacific Corp.,* 144 F.App'x 54, 59 (11th Cir. 2005) (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.2001)). "The employee's subjective view of the significance and adversity of the employer's act is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

### b.
### Plaintiffs Continue to Fail to Allege Any Adverse Employment Action

As the bases of their respective disparate treatment race[1] discrimination claims under §1981, each of the Plaintiffs allege that the Setai:

- "unlawfully retained tips," claiming both that: 1) based upon their race, certain non-Hispanic managers and supervisors retained their tips but "did not retain the tips extended to non-Hispanic valets;" and 2) also that certain alleged supervisory personnel improperly participated in the valet tip pool as to **all valets** (in violation of the FLSA);

- also with regard to tips, "gave preferential treatment to Plaintiffs' non-Hispanic co-workers in the assignment of vehicle retrievals," including "deliberately send[ing] Plaintiffs to retrieve the wrong car in an effort to divert tips to non-Hispanic employees;"

- "denied Plaintiffs the same employment privileges afforded to their non-Hispanic co-workers," by, to wit, a) "permit[ing] non-Hispanic valets to show up late to work

---

[1] In addition to his race, Mateo also bases his Section 1981 discrimination claim on his color as "a dark-skinned person . . . ." [D.E. #11, ¶140].

or call out of work as often as they liked without being subject to discipline;" b) "allow[ing] Black Haitian valets . . . to enter the valet office and stay there for as long as they wanted;" c) not allowing Plaintiffs "to use the service elevators even though non-Hispanic valets were allowed to use them," and, d) permitting non-Hispanic employees to take hour-long (or longer) breaks while either limiting Plaintiffs' breaks to ten (10) minutes or prohibiting them from taking breaks; and,

- "assigned a more burdensome workload to Plaintiffs.[2]"

[D.E. #11, ¶¶ 25, 44, 49, 50, 62-71, 116, 143, 171].

Based upon the above-alleged conduct, Plaintiffs allege that they were each constructively discharged.  *Id.* at ¶¶96-98.

As the basis of his disparate impact sexual discrimination claim under Title VII, Mateo alleges that: 1) bellmen made comments about his sexual orientation, referring to him as "gay" and "maricon," and spread false rumors that he was engaged in a sexual relationship with a male resident of the Property; and, 2) he was constructively discharged.  *Id.* at ¶¶83, 84, 198.

### i.
### Tips

"Although the denial of a monetary bonus (like a tip) may constitute an adverse employment action, the potential tips at issue [cannot be] of *de minimis* amount, the deprivation of which cannot rise to the level of an adverse employment action."  *Arafi v. Mandarin Oriental*, 867 F.Supp.2d at 72  (dismissing disparate treatment claims as "the court cannot conclude that [the] loss of potential

---

[2] Although this alleged "more burdensome workload" is not specifically referenced in any of the disparate treatment discrimination counts, the Setai is addressing that allegation, in an abundance of caution, as it appears in Plaintiffs' general allegations and is incorporated by reference in each of those counts.  [D.E. #11, ¶¶116, 143, 171, 198].

6

tips [at issue] amounts to a materially adverse employment action); *see also Dickerson v. SecTek, Inc.*, 238 F.Supp.2d 66, 76 n.4 (D.D.C. 2002) (concluding that the difference between one day's pay and one day's overtime pay "could well be described as a *de minimis* loss of pay" and, therefore, not actionable under Title VII); *Chin Tuan v. Flatrate Moving Network LLC*, 2020 WL 4606318, *4 (S.D.N.Y. 2020) ("Consistently assigning an individual solely to jobs where he would receive lower or no tips may constitute an adverse employment action. . . . But a review of the specific allegations in the Complaint as to Plaintiff's assignments and hours during the eight days he worked shows that any denial of overtime or lucrative assignments was sporadic rather than consistent and therefore does not constitute an adverse employment action."); *cf. Rowe v. Jagdamba, Inc.*, 302 F. App'x 59, 62 (2d Cir. 2008) ("We assume, without here deciding, that [in] . . . a profession where wage is determined almost solely by tips, the consistent decision to place the plaintiff in a section with fewer customers than anywhere else could amount to a decreased wage, and, if combined with other disadvantages, could rise to the level of an adverse employment action.").

Plaintiffs continue to fail to allege sufficient facts indicating that the claimed tips retained or diverted based upon the alleged discriminatory conduct (as opposed to the claimed tips retained or diverted as a result of the alleged violations of the FLSA, which Plaintiffs allege applied to **all valets**) were anything other than *de minimis*.

In their Amended Complaint, Plaintiffs vaguely allege - immediately after alleging that  tips were diverted from **all valets** (regardless of race) in violation of the FLSA -  that "the Defendant's unlawful retention and/or distribution of tips had a significant and material negative impact on the wages that Plaintiffs earned, often resulting in Plaintiffs losing thousands of dollars in tips per week."  [D.E. #11, ¶¶49-55].  However, Plaintiffs fail to include any allegations as to the amount of tips that they are claiming were allegedly diverted from: 1) them on the basis of their race, in

violation of Section 1981; and, 2) all valets, in violation of the FLSA.   Accordingly, the Amended Complaint fails to sufficiently allege that the claimed discriminatorily retained or diverted tips rise to the level of an adverse employment action.

Further undermining the notion that the subject tips were "material," Plaintiffs' employment with the Setai was brief: 1) Gutierrez was employed for less than two (2) months; 2) De La Rosa was employed for less than eight (8) months; and, 3) Mateo was employed for approximately eleven (11) months.  *Id.* at ¶¶19-21, 96-98.

In light of the foregoing, the Amended Complaint fails to sufficiently allege that the claimed discriminatorily retained or diverted tips constitute an adverse employment action.

### ii.
### Breaks

Regarding Plaintiffs' allegation that their breaks were either impermissibly limited or that they were prohibited from taking breaks altogether, "[m]any courts have held that denial of a break period is not sufficiently material to constitute an adverse [employment] action."   *Carter v. Donahue,* 2015 WL 2024844, *5 (M.D. Fla. 2015) (citing *Grimsely v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (holding that employee did not suffer adverse employment action when supervisor increased workload, assigned him additional tasks and denied him breaks while allowing employees outside of protected class to take breaks)); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 486 (5th Cir. 2008) (holding that having some break requests denied by a supervisor "amount[s] to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time.") (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).   Accordingly, any alleged restriction or prohibition of breaks also fails to allege an adverse employment action required to support Plaintiffs' disparate treatment discrimination claims.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

### iii.
### The Other Alleged Discriminatory Acts

Plaintiffs allege that they were assigned a "more burdensome workload" than non-Hispanic employees. [D.E. #11, ¶65]. That allegation, however, does not rise to the level of an adverse employment action. *See Grimsley*, 284 Fed.Appx. at 609 ("Although [plaintiff's] workload sometimes increased and he was occasionally assigned additional tasks, these kinds of temporary assignments, without a change in compensation or position, do not amount to a 'serious and material change in the terms, conditions, or privileges of employment.'").

The same is true as to Plaintiffs' allegation that they were not permitted to call out of work or show up late, which also fails to allege an adverse employment action. *See Butler v. Alabama Dep't of Transportation*, 536 F.3d 1209, 1215-16 (11th Cir. 2008) ("Requiring an employee to perform [their] job is not a change in the terms, conditions, or privileges of [their] employment. Similarly, the work day started at 7:00 a.m., so requiring [plaintiff] to be present for work at that time was also not an adverse employment action.").

Plaintiffs also allege that a Valet Manager: 1) "allowed Black Haitian valets . . . to enter the valet office and stay there for as long as they wanted. . . . Plaintiffs, on the other hand, were not allowed to enter the valet office because they were Hispanic;" and, 2) did not allow Plaintiffs "to use the service elevators even though non-Hispanic valets were allowed to use them." [D.E. #11, ¶¶67-69, 71]. Those allegations fail to salvage Plaintiffs' deficient discrimination claims as they are based upon nothing more than "[e]veryday workplace grievances." *See Sealy v. State Univ. of New York At Stony Brook*, 408 F.Supp.3d 218, 226 (E.D.N.Y. 2019) (dismissing Title VII discrimination claim based on allegations that, *inter alia*, defendant transferred plaintiff to a more remote work location, denied plaintiff a key to supply room, required Plaintiff to wait 45 minutes to

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

access the supply room, assigned plaintiff a vehicle that was frequently in the shop, and denied plaintiff new tools, finding that these allegations comprised "[e]veryday workplace grievances, disappointments, and setbacks [that] do not constitute adverse employment actions within the meaning of Title VII.") (citing *La Grande v. DeCrescente Distrib. Co*., 370 F. App'x 206, 211 (2d Cir. 2010)).

Finally, Mateo attempts to support his disparate impact sexual discrimination claim under Title VII with the allegation that bellmen: 1) referred to him using derogatory terms based upon his sexual orientation; and, 2) spread false rumors that he was engaged in a sexual relationship with a male resident of the Property.  [D.E. #11, ¶198].  Those allegations, however, also fail to establish any claimed adverse employment action.  *See Freeman v. Oakland Unified School Dist.*, 1998 WL 310758, *3 (N.D. Cal. 1998) ("[T]he use of the epithet [i]s not an adverse employment action."); *see also Robinson v. Our Lady of the Lake Regional Medical Center, Inc.*, 535 Fed.Appx. 348, 352 (5th Cir. 2013) (finding that use of a racial epithet in describing a coworker was not a materially adverse employment action); *Chin Tuan*, 2020 WL 4606318 at *2, 5 (finding that "co-workers calling [plaintiff, of Asian national origin] 'Chino' ["which Plaintiff understands to mean 'Chinese person'"] [and] sp[eaking] his name in a sarcastic tone . . . [did not] constitute[] an adverse employment action because the conduct did not cause 'materially adverse change in the terms and conditions of employment.'"); *Boyd v. Presbyterian Hosp. in City of N.Y.*, 160 F.Supp.2d 522, 537 (S.D.N.Y.2001) ("The 'gossips' Plaintiff cites likewise are not adverse employment actions.").

### iv.
### Plaintiffs Fail to Sufficiently Allege That They Were Constructively Discharged

To allege a constructive discharge, a plaintiff must allege that their "working conditions were so intolerable that a reasonable person in [their] position would have been compelled to

resign." *Moore v. San Carlos Park Fire Protection & Rescue*, 2018 WL 3931853, \*5 (S.D. Fla. 2018) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)). "Working conditions" include an employee's salary, location or duties. *See Patrick v. City of Port St. Lucie*, 2007 WL 9702580, \*4 (S.D. Fla. 2007); *see also U.S. Equal Employment Opportunity Commission v. Nice Systems, Inc.*, 2021 WL 9950751, \*5-6 (S.D. Fla. 2021) (An "extreme cut in pay" or "significant loss of potential earnings" can create conditions "so intolerable" that a constructive discharge results).

The threshold to establish a constructive discharge is "quite high," and "courts do not consider the plaintiff's subjective feelings." *Moore*, 2018 WL 3931853 at \*5. To establish a constructive discharge, a plaintiff must "show an even greater severity or pervasiveness of harassing conduct than the minimum required for a hostile work environment." *Johnson v. Bottling Group, LLC*, 2022 WL 4374600, \*6 (M.D. Fla. 2022).

As they did in their original Complaint, Plaintiffs continue to base their constructive discharge allegation upon the alleged discriminatory actions discussed above. [D.E. #11, ¶¶96-98]. As discussed above, the allegations of the Amended Complaint fail to sufficiently allege that any of those claimed discriminatory actions constituted a "serious and material change in the terms, **conditions**, or privileges **of [their] employment**" and, thus, that their "**working conditions** were so intolerable that a reasonable person in [their] position would have been compelled to resign." *See Barrow*, 144 F.App'x at 59 (emphasis added); *see also Moore*, 2018 WL 3931853 at \*5 (emphasis added).  Accordingly, Plaintiffs continue to fail to sufficiently allege a constructive discharge.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

**2.**
**Plaintiffs' Hostile Work Environment Claims**

**a.**
**The Pleading Requirements**

To state a claim for hostile work environment under Title VII and §1981, a plaintiff must allege: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." *Thompson v. City of Miami Beach, Fla.*, 990 F.Supp.2d 1335, 1339 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002)).

Regarding the fourth requirement - harassment that is "sufficiently severe or pervasive to alter the terms and conditions of employment" – the Eleventh Circuit has elucidated as follows:

> [t]o be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. In evaluating the objective severity of the alleged hostile work environment, we consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. But Title VII is not a general civility code; ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing cannot form the basis of a claim for actionable harassment or hostile work environment. Instead, conduct must be extreme to amount to a change in terms and conditions of employment. Title VII is not a shield against harsh treatment in the workplace; personal animosity is not the equivalent of [race] discrimination.

*Short v. Immokalee Water & Sewer District*, 165 F.Supp.3d 1129, 1141-42 (M.D. Fla. 2016) (citing *Corbett v. Beseler*, 635 Fed.Appx. 809, 816 (11th Cir. 2015)).

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

Although, as is the case herein, claims for hostile work environment are often made in tandem with claims for disparate treatment discrimination, "alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim[]." *Kilby-Robb v. Spellings*, 522 F.Supp.2d 148, 164 (D. D.C. 2007); *see also Parker v. State, Dep't of Public Safety*, 11 F.Supp.2d 467, 475 (D. Del.1998) (stating that "the dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.").

**b.**
**De La Rosa and Gutierrez's Hostile Work Environment Claims**

De La Rosa and Gutierrez's hostile work environment claims are largely reconstituted iterations of their disparate treatment claims with the following minor (and legally insufficient) additions: 1) as to both, the inclusion of an allegation that they were "subjected . . . to harsher scrutiny and discipline than [their] non-Hispanic co-workers;" and, 2) as to Gutierrez, the inclusion of an allegation that on a single occasion a Valet Manager "shoved him." [D.E. #11, ¶¶76-78, 129, 184].

With regard to De La Rosa and Gutierrez's allegation that they were subjected to "harsher scrutiny and discipline[3]," which Plaintiffs also phrase as "harsh scrutiny and criticism," this claimed conduct fails to support their hostile work environment claims. *Id.* at ¶74; *see also Harbuck v. Teets*, 152 F. App'x 846, 848 (11th Cir. 2005) (holding that Plaintiff's allegation that she was "subject to heightened scrutiny" did not "constitute . . . a hostile working environment"); *Davis v. Town of Lake*

---

[3] With regard to the alleged "discipline," Plaintiffs fail to allege precisely how or when they were allegedly disciplined.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

*Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) (noting that courts generally find "that criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit"); *Martinelli v. Penn Miller Ins. Co.*, 269 Fed.Appx. 226, 228 (3d Cir. 2008) (finding that employer's scrutiny of employee's work, "while unpleasant and annoying, did not create the sort of hostile work environment that would satisfy Title VII[] . . . ."); *Corbett*, 635 Fed.Appx. at 816 ("Title VII is not a shield against harsh treatment in the workplace . . . .").

Gutierrez further alleges that on **one occasion** a Valet Manager "shoved" him.  [D.E. #11, ¶¶ 76, 184].  A single incident of being "pushed" is neither pervasive (by definition) nor "sufficiently severe" without more - such as a demonstrable physical injury, which is lacking here – such that it can support a hostile work environment claim.

### c.
### Mateo's Tile VII Hostile Work Environment Claim

Mateo's Title VII hostile work environment claim based upon his perceived sexual orientation (Count VIII) is simply a restatement of his Title VII disparate treatment claim (Count VII).  The alleged acts upon which that hostile work environment claim is based are **exactly the same** as those upon which Mateo's corresponding disparate treatment discrimination claim is based [D.E. #11, ¶¶ 198, 211].  Accordingly, Mateo's Title VII hostile work environment claim should be dismissed as those grounds are equally insufficient to support a claim of hostile work environment.

### 3.
### Plaintiffs' Remaining Counts

By way of the instant Motion, the Setai is not seeking to dismiss Counts IV or IX through XI of Plaintiffs' Amended Complaint.  Florida District Courts have routinely held that the filing of a partial motion to dismiss, such as the instant Motion, extends the time for a defendant to respond

to those counts not addressed in a partial motion to dismiss. *Dimension Leasing, Inc. v. Variety Children's Hospital*, 2006 WL 8432710, *1 (S.D. Fla. 2006) (finding that a motion to dismiss under Rule 12(b) extends the time to file an answer to the remaining counts of a complaint); *Raptor, LLC v. Odebrecht Construction, Inc.*, 2018 WL 11352677, *1 (S.D. Fla. 2018) (finding that defendant's "time to answer Counts [not subject of motion to dismiss] is extended until 14 days after the Court rules on the pending Motion to Dismiss."); *Ferk v. Mitchell*, 2014 WL 7369646, *1 n. 1 (S.D. Fla. 2014); *Jacques v. First Liberty Ins. Corp.*, 2016 WL 3221082, *1 (M.D. Fla. 2016) (denying a plaintiff's application for default, noting that "[t]he majority of courts . . . have concluded that a party need not file an answer while a partial motion to dismiss is pending"); *Salas v. Commonwealth Land Title Ins. Co.*, 2022 WL 1630988, *3 (N.D. Fla. 2022) (citing *Beaulieu v. Bd. of Trs. Of Univ. of W. Fla.*, 2007 WL 2020161, *2 (N.D. Fla. 2007) (collecting cases)).

Accordingly, the Setai reserves its right to respond to the allegations contained in Counts IV and IX through XI of Plaintiffs' Amended Complaint pending the Court's ruling on the instant Motion.

If, *arguendo*, the Court does not agree with or declines to apply the above-cited case law such that the deadline for the Setai to respond to those remaining Counts has been extended by operation of law, the Setai respectfully requests that the Court extend the time for the Setai to respond to Counts IV and IX through XI of Plaintiffs' Amended Complaint until fourteen (14) days after the Court's ruling on the Motion to Dismiss. This Court may for good cause shown and upon timely motion enlarge the time within which an act shall otherwise be done; this request is not made for the purpose of delay, and Plaintiffs will not be prejudiced by this enlargement. The Setai respectfully suggests that such a ruling would provide a modest efficiency in that the Setai would

be able to file one Answer and Affirmative Defenses rather than filing and partially amending a responsive pleading.[4]

      **WHEREFORE,** Defendant, Setai Hotel Acquisition LLC, respectfully requests that the Court enter its Order: 1) dismissing Plaintiffs' Amended Complaint; 2) if the Court does not agree that the deadline for the Setai to respond to Counts IV and IX through XI of the Amended Complaint is extended by the operation of law pending the Court's resolution of the Setai's Motion to Dismiss the remaining Counts, granting the Setai an extension of time of fourteen (14) days following this Court's ruling on the Motion to Dismiss to respond to those Counts; and, 3) granting such other and further relief as the Court deems just and proper.

<u>**CERTIFICATE OF GOOD FAITH CONFERENCE:**</u>
<u>**CONFERRED AND ISSUE RESOLVED**</u>

      As to the request, in the alternative, for an extension of time to respond to Counts IV and IX through XI of the Amended Complaint if the Court does not find that the requested extension is provided by operation of law, and pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought by way of that request in a good faith effort to resolve that issue and that issue has been resolved. Plaintiffs' counsel has agreed to the requested extension until fourteen (14) days after the Court rules on the Setai's Motion to Dismiss.

---

[4] Pursuant to Local Rule 7.1, undersigned counsel certifies that they conferred with Plaintiffs' counsel on the extension requested, in the event that the Court does not agree that the extension is provided by operation of law, and Plaintiffs' counsel has advised that Plaintiffs do not object to the requested extension.

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

Respectfully submitted this 20th day of November 2023.

By:     *s/ Eric R. Thompson*
Robin Taylor Symons
Rsymons@grm.com
Florida Bar No.: 356832
Eric R. Thompson
Ethompson@gordonrees.com
Florida Bar No. 888931
**GORDON REES**
**SCULLY MANSUKHANI**
 Miami Tower
100 S.E. Second Street, Suite 3900
Miami, FL  33131
Telephone: (305) 428-5300
Facsimile:  (877) 644-6209

*Attorneys for Defendant Setai Hotel Acquisition LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys identified on the following Service List.

 *s/ Eric R. Thompson*
Eric R. Thompson, FBN 888931

**Service List**
 Kyle T. MacDonald, Esq.
 Kyle@dereksmithlaw.com
 DEREK SMITH LAW GROUP, PLLC
 701 Brickell Ave., Suite 1310
 Miami, FL 33131
 *Attorneys for Plaintiffs*