UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

YOANDRY DE LA ROSA,
BENJAMIN FELIZ MATEO, and
MAXIMO GUTIERREZ,

      Plaintiffs,                                      CASE NO.: 1:23-cv-23310-KMW

v.

SETAI HOTEL ACQUISITION LLC,

      Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, YOANDRY DE LA ROSA, BENJAMIN FELIZ MATEO, and MAXIMO GUTIERREZ (collectively, the "Plaintiffs"), hereby file their Response in Opposition to Defendant, SETAI HOTEL ACQUISITION LLC's ("Defendant" and/or "SHA"), Motion to Dismiss Counts I Through III And V Through VIII Of Plaintiffs' Amended Complaint ("Motion to Dismiss" and/or "Motion"). In support, Plaintiffs state as follows:

**INTRODUCTION**

Defendant's Motion seeking dismissal of the Plaintiffs' Amended Complaint ("Complaint") is overreaching and must be denied. As set forth herein, Plaintiffs' Amended Complaint contains sufficient factual allegations to put Defendant on adequate notice of the claims against it and the grounds upon which they rest, under 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

Plaintiffs have each properly stated claims against Defendant for disparate treatment and hostile work environment discrimination on their basis of race, in violation of Section 1981. In addition, Plaintiff Feliz Mateo has properly stated claims against Defendant for disparate treatment

1

and hostile work environment discrimination on the basis of his sex, in violation of Title VII. Defendant's Motion fails to establish any meaningful pleading deficiencies and asks this Court to make determinations inappropriate at the motion to dismiss stage. For this and other reasons, Plaintiffs respectfully request that this Honorable Court deny the Defendant's Motion in its entirety.

## **STANDARD OF LAW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Arista Records. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" *Chepak v. Metro. Hosp.*, No. 13 Civ. 1726, 2014 WL 552682, at *1 (2d Cir. Feb. 13, 2014) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, the Court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[s]" in the plaintiff's favor, and use its "judicial experience and common sense" to conduct a "context-specific" analysis of the complaint. *Iqbal*, 556 U.S. at 678–79. Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, *Arista Records*, 604 F.3d at 119–21, but only facts sufficient to give the defendant "fair notice of what

the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, No. 14-2265-CV, 2015 WL 5127519, at *11 (2d Cir. Sept. 2, 2015). In determining whether the complaint states a plausible discrimination case, a "court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 11.

## LEGAL ARGUMENT

### I. Plaintiffs Have Established a *Prima Facie* Case of Discrimination in Violation of Section 1981 and Title VII

Plaintiffs' Amended Complaint properly establishes claims against Defendant for disparate treatment under Section 1981 and Title VII. Specifically, Plaintiffs De La Rosa, Feliz Mateo, and Gutierrez, have each asserted claims against Defendant for race discrimination under Section 1981 (Counts I, III, and V) and Plaintiff Feliz Mateo has asserted a claim against Defendant for sex discrimination under Title VII (Count VII).[1] Each of Plaintiffs' claims satisfy the pleading requirements necessary to survive a motion to dismiss and include sufficient facts to put Defendant on notice of the claims asserted against it. Section 1981 was enacted to remedy the precise kind of unlawful discrimination outlined by in the Plaintiffs' Complaint. *See, e.g.*, *Merrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (describing Section 1981's purpose in prohibiting intentional race discrimination).

---

[1] Plaintiff Feliz Mateo's Section 1981 discrimination claim under Count III includes race and color discrimination, on account of his dark-skinned complexion. For the purposes of this response, this claim is referred to as "race discrimination."

3

As the Eleventh Circuit has made clear, plaintiffs in employment discrimination cases are not required to satisfy the elements of the *McDonnell-Douglas* framework to survive a motion to dismiss. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270–71 (11th Cir. 2004); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (finding pleadings sufficient when they give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest). This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement. *See Swierkiewicz*, 534 U.S. at 510. Plaintiffs in employment discrimination claims need only provide enough factual matter, that when taken as true, suggest intentional race discrimination. *See Surtain v. Hamlin Terrance Found.*, 789 F3d 1239, 1246 (11th Cir. 2015).

Plaintiffs have nonetheless satisfied the elements of the *McDonnell-Douglas* framework, which include: (1) Plaintiffs are members of a protected class; (2) Plaintiffs were subjected to an adverse employment action; (3) Plaintiffs' employer treated similarly situated employees outside of their protected class more favorably than they were treated; and (4) Plaintiffs were qualified to do the job. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

As Hispanic males, Plaintiffs are members of a protected class, thus satisfying the first element. Am. Compl., ECF No. 11, ¶¶ 3–5. Plaintiffs were subjected to a litany of discriminatory acts on account of their Hispanic race. In their roles as Valet Runners, Defendant routinely and systematically deprived Plaintiffs of tipped wages by giving preferential treatment to the Plaintiffs' non-Hispanic co-workers in the assignment of vehicle retrievals, and by intentionally diverting tips to non-Hispanic employees using false vehicle retrieval assignments. Am. Compl., ECF No. 11, ¶¶ 60–64. Plaintiffs were also subjected to discipline for conduct that non-Hispanic employees were allowed to engage in and were deprived of the same access to employment privileges as their non-Hispanic counterparts, included being denied access to drinking water and the use of elevators.

4

Am. Compl., ECF No. 11, ¶¶ 66–75. Defendant's discriminatory conduct eventually culminated in the Plaintiffs' constructive discharge. Am. Compl., ECF No. 11, ¶¶ 96–99. As discussed further herein, these actions are more than sufficient to establish an adverse employment action under the second element of Plaintiffs' claim.

Plaintiffs were subjected to this discriminatory conduct solely on account of their Hispanic race. *See, e.g.*, Am. Compl., ECF No. 11, ¶¶ 61–64. None of Plaintiffs' non-Hispanic colleagues were subjected to similar treatment, which satisfies the third element of Plaintiffs' claims. Defendant's non-Hispanic employees that enjoyed preferential treatment in comparison to the Plaintiffs, included, Edson Belfond ("Belfond"), an individual Black Haitian male; Alexis Freud ("Freud"), an individual Black Haitian male; Joseph Clotaire ("Clotaire"), an individual Black Haitian male; Ronald Orisma ("Orisma") an individual Black Haitian male; and Natasha Pierre ("Pierre"), an individual Black Haitian female. *See, e.g.*, Am. Compl., ECF No. 11, ¶¶ 60–61. Defendant openly tolerated discriminatory conduct, as evidenced by the use of racial and homophobic slurs in the presence of Plaintiffs, including the use of the terms "gay", "negro" ('nigger'), "negro ladrón" ('thieving nigger'); and "maricon" ('faggot'). Am. Compl., ECF No. 11, ¶¶ 80–83. Lastly, Plaintiffs were qualified for their positions based on their education and work history, as evidenced by their exemplary work performance, thereby satisfying the fourth element. Am. Compl., ECF No. 11, ¶¶ 22.

### A. Plaintiffs Were Subjected to Adverse Employment Actions

An adverse employment action is established when the employee shows "that a decision of the employer impacted the terms, conditions, or privileges of [his] job in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018) (cleaned up). In alleging an adverse employment action, the employee must show that the change in terms, condition, or

privileges of employment were "serious and material . . . so that a reasonable person in the circumstances would find the employment action to be materially adverse." *Id.* (internal quotation marks omitted) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239).

Defendant contends that the Plaintiffs' claims of race discrimination must be dismissed because Plaintiffs have failed to sufficiently allege an adverse employment action. Mot. Dismiss, ECF No. 17, p. 5. Rather than accepting Plaintiffs' well-pleaded facts as true, Defendant asks the Court to resolve factual disputes inappropriate to determine at the motion to dismiss stage—such as whether the amount of tips unlawfully withheld by Defendant were significant. Mot. Dismiss, ECF No. 17, p. 6. Plaintiffs' Amended Complaint identifies several adverse employment actions, including but not limited to: (1) constructive discharge, (2) the denial of tips discriminatory work assignments, and (3) the denial of breaks and equal access to facilities.

### I.   Adverse Employment Action: Constructive Discharge

Defendant's Motion does not challenge the notion that constructive discharge constitutes an adverse employment action. Instead, Defendant contends that Plaintiffs' allegations, even when taken as true, are insufficient to meet the standard for constructive discharge. To allege a constructive discharge, a plaintiff must plausibly allege "that working conditions were so intolerable that a reasonable person in [her] position would have been compelled to resign." *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020) (*quoting Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)). Defendant argues that even when analyzing the conduct alleged by Plaintiffs as a whole, Defendant's conduct still does not meet the "quite high" standard required to establish constructive discharge. Mot. Dismiss, ECF No. 17, p. 11.

Despite citing several cases to support its argument, Defendant fails to provide any authority specifically supporting the notion that the conduct endured by Plaintiffs in this case cannot support a constructive discharge claim at the pleading stage. Mot. Dismiss, ECF No. 17, pp. 10–11. As an initial matter, nearly all of the cases cited by Defendant addressed constructive discharge claims at the summary judgment stage, not on a motion to dismiss. *Id.* Of all the cases cited by Defendant, only two decisions resulted in the granting of a motion to dismiss on a constructive discharge claim, *Moore v. San Carlos Park Fire Protection & Rescue* and *Patrick v. City of Port St. Lucie*. *See Moore*, 808 Fed. Appx. at 798; *Patrick*, 2007 U.S. Dist. LEXIS 104929, at *11.

Defendant's reliance on these decisions is entirely misplaced. In both cases, the courts' dismissals were granted due to vague and conclusory allegations, not because the conduct alleged fell short of the constructive discharge standard. *See Patrick*, 2007 U.S. Dist. LEXIS 104929, at *11 (granting dismissal because the complaint was "absolutely devoid of any facts or allegations regarding the Plaintiff's working conditions" and did not "identify any change in her working conditions, related to salary, location or duties"); *Moore*, 808 Fed. Appx. at 798 (granting dismissal because the complaint was extremely vague, did not reference specific dates or the individual perpetrators, and because the last alleged discriminatory act occurred three months prior to resignation).

In *Santiago v. University of Miami*, the Court made this same distinction in denying a defendant's motion to dismiss the plaintiff's constructive discharge claim. Santiago v. Univ. of Miami, 2023 U.S. Dist. LEXIS 60880, at *24, *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 70170 (S.D. Fla., Apr. 21, 2023). The Court rejected the argument that the plaintiff's allegations were insufficient to establish a constructive discharge claim, noting that the defendant's cited authority only included dismissals based on pleading deficiencies, rather than the specific

7

conduct alleged by the plaintiff. *Id.* at *25. Here, Defendant's Motion makes the same fatal error and fails to adequately address the conduct alleged by Plaintiffs in this case.

Defendant's Motion ignores the severity of the conduct alleged by Plaintiffs and the Defendant's repeated and willful failures to take any corrective action in response to Plaintiffs' complaints, which any reasonable person would find intolerable. Plaintiffs' Amended Complaint describes severe and humiliating discriminatory treatment, including being denied access to drinking water and air conditioning, losing a significant amount income due to Defendant's discriminatory assignment of vehicle retrievals, being subjected to the use of racial and homophobic like "negro ladrón" ('thieving nigger') and "maricon" ('faggot'), and being physically assaulted. *See, e.g.*, Am. Compl., ECF No. 11, ¶¶ 55, 68, 76, 80. Plaintiffs repeatedly made complaints regarding the discriminatory treatment, including reports made to Edson Belfond, the Plaintiffs' supervisor, Cynthia Abugattas, a Human Resources Representative, and Alex Furrer, the General Manager. *See* Am. Compl., ECF No. 11, ¶¶ 89–94.

Plaintiffs' work environment eventually became unbearable, and they were ultimately left with no choice but to resign. Am. Compl., ECF No. 11, ¶¶ 96–99. Conduct of this nature is a far cry from the "everyday workplace grievances" Defendant characterizes it as. Mot. Dismiss, ECF No. 17, p. 19. In fact, in one of the cases provided by Defendant, the court found that the fact that the defendant's discriminatory conduct resulted in a significant loss in the income alone was sufficient for the work environment to be deemed intolerable. *See EEOC v. Nice Sys., Inc.*, 2021 U.S. Dist. LEXIS 263668, at *15 (denying motion to dismiss). Here, the Plaintiffs have alleged a significant and material loss in their wages on account of the Defendant's discriminatory treatment, in addition to the targeted racial conduct described in detail herein. Accordingly, Plaintiffs' have sufficiently established their respective constructive discharge claims.

**II.     Adverse Employment Action: Denial of Tips and Discriminatory Work Assignments**

Plaintiffs have also established an adverse employment action based on Defendant's discriminatory assignment of vehicle retrievals and denial of tipped wages. In the Amended Complaint, Plaintiffs detail the manner in which Defendant's employees deliberately deprived Plaintiffs of tips by: (1) assigning more generously tipping patrons to non-Hispanic employees, and assigning patrons with a reputation for giving low and/or no tips, to the Plaintiffs, and (2) intentionally sending Plaintiffs on non-existent vehicle retrieval assignments to divert the assignments to non-Hispanic employees. Am. Compl., ECF No. 11, ¶¶ 60–65.

In its Motion, Defendant argues that the denial of Plaintiffs' tipped wages on account of their race is not an adverse employment action. Mot. Dismiss, ECF No. 17, pp. 6–8. Defendant fails to provide any authority from the Eleventh Circuit to support this argument, likely because it is well-established that actions which adversely affect a plaintiff's compensation are sufficient to establish an adverse employment action. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct <u>that alters the employee's compensation</u>, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citation omitted), overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

The denial of wages represents a material change in a plaintiff's employment and has routinely been recognized as an adverse employment action. *See, e.g.*, *Spence v. Miami-Dade Cnty.*, 2017 U.S. Dist. LEXIS 10994, at *16 (finding that the denial of additional/increased wages is an adverse employment action); *Clark v. Sch. Bd. of Collier Cnty.*, 2016 U.S. Dist. LEXIS 54088, at *9 (finding that an actual loss in supplemental wages is an adverse employment action); *Gillis v. Ga.*

*Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005) (finding that the denial of a raise significantly affects compensation and is sufficient to establish an adverse employment action).

Defendant further claims that the denial of Plaintiffs' tips does not rise to the level of an adverse employment action because Plaintiffs do not allege the amount of tips "were anything other than *de minimis*." Mot. Dismiss, ECF No. 17, p. 7. In reality, Plaintiffs' Amended Complaint specifically alleges, "the Defendant's unlawful retention and/or distribution of tips had a significant and material negative impact on the wages that the Plaintiffs earned, often resulting in the Plaintiffs losing thousands of dollars in tips per week." Am. Compl., ECF No. 11, ¶ 55. Tipped wages in the amount of thousands of dollars per week are a far cry from *de minimis* for any reasonable employee. In an attempt to further minimize the wages stolen from the Plaintiffs, Defendant incorrectly conflates Plaintiffs' claims for: (1) tipped wages diverted from the Plaintiffs on account of their Hispanic race, and (2) tipped wages unlawfully taken from all of Defendant's valet employees via improper tip pooling and credit card tip theft. Mot. Dismiss, ECF No. 17, pp. 10–11. These are separate acts and are described distinctly in the Plaintiffs' Amended Complaint. *See* Am. Compl., ECF No. 11, ¶¶ 53, 62. Accordingly, Defendant's systematic use of discriminatory work assignments to deprive Plaintiffs of tipped wages is sufficient to establish an adverse employment action.

### III. Adverse Employment Action: Denial of Breaks and Equal Access to Facilities

In addition to the other adverse employment actions described herein, Plaintiffs have also established an adverse employment action based on Defendant's discriminatory denial of break time and equal access to facilities. Plaintiffs' Amended Complaint describes Defendant's discriminatory treatment of Plaintiffs as second-class citizens, including denying them access to

break time, the use of air conditioning and drinking water, and the use of service elevators. *See* Am. Compl., ECF No. 11, ¶¶ 68, 70, 71.

Defendant's Motion contends that these acts are insufficient to be deemed adverse employment actions. Mot. Dismiss, ECF No. 17, pp. 8–9. In support of its argument, Defendant cites to two cases, *Carter v. Donahue* and *Grimsley v. Marshalls of MA, Inc.*, both of which are inapposite to the present case. *See Carter*, 2015 U.S. Dist. LEXIS 56885, at *5; *Grimsley*, 284 Fed. Appx. at 609. Notably, both cases addressed adverse employment actions at the summary judgment stage and not on a motion to dismiss. In *Carter*, the court determined the denial of a *single break period* was insufficient to establish an adverse employment action. *Carter*, 2015 U.S. Dist. LEXIS 56885, at *10. *Carter* is easily distinguishable from the present case because here, Plaintiffs have alleged regular and routine denial of break time, as opposed to a single shift.

Defendant's reliance on *Grimsley* fails for similar reasons. In *Grimsley*, the Eleventh Circuit found that the denial of break time and the *occasional assignment of temporary work assignments* did not rise to the level of an adverse employment action. *Grimsley*, 284 Fed. Appx. at 609. In stark contrast, the Plaintiffs' Amended Complaint describes Defendant's routine refusal to allow Plaintiffs to take breaks, which included denying Plaintiffs of access to air conditioning and drinking water, all while being forced to complete an increased number of vehicle additional retrieval assignments for their non-Hispanic co-workers. Am. Compl., ECF No. 11, ¶¶ 65, 67, 68. Plaintiffs were subjected to these actions regularly, not on an occasional or sporadic basis. *Id.*

Plaintiffs were further subjected to racial segregation in the use of facilities in the workplace. Plaintiffs were prohibited from using the service elevators, even though their non-Hispanic counterparts used the service elevators freely. ¶¶ 71–73. As a result, Plaintiffs were forced to take the stairs on a regular basis. *Id.* Adding further humiliation and embarrassment, Plaintiff Feliz

11

Mateo was forced to take the stairs even while suffering from a spinal cord injury, which aggravated his condition. *Id.* Defendant's refusal to allow Plaintiffs to take breaks, have access to air conditioning and drinking water, and use the same facilities as non-Hispanic employees, are more than sufficient to establish an adverse employment action. Accordingly, Defendant's Motion to Dismiss the Plaintiffs' discrimination claims under Section 1981 must be denied.

### B. Plaintiff Feliz Mateo Was Subjected to Sex Discrimination in Violation of Title VII

Discrimination claims brought under Title VII can be categorized as either mixed-motive or single-motive claims. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)). Single-motive claims are analyzed using the elements of the *McDonnell-Douglas* framework. *Stevenson v. City of Sunrise*, 2021 U.S. App. LEXIS 30858, at *17. Mixed-motive claims can be established by showing that illegal bias, such as bias based on sex or gender, "was a motivating factor for" an adverse employment action, "even though other factors also motivated" the action. *Quigg*, 814 F.3d at 1235 (quoting 42 U.S.C. § 2000e—2(m)). Mixed-motive claims require that the plaintiff show (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action. *Id.* at 1239.

Plaintiff Feliz Mateo has established a prima facie case of sex discrimination under either standard of proof.[2] As an individual male, Plaintiff Feliz Mateo is a member of a protected class. Under Title VII, sex discrimination encompasses discrimination on the basis of gender stereotypes and perceived sexual orientation. *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737 (2020).

---

[2] Plaintiff Feliz Mateo can pursue his Title VII under either standard at the pleading stage. *Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, 2021 U.S. Dist. LEXIS 155555, at *21 (citing *EEOC v. TBC Corp.*, 532 F. App'x 901, 902-903 (11th Cir. 2013)) (stating that a plaintiff is not required to state whether they are pursuing a single-motive or mixed-motive framework in the complaint because they are different legal theories as opposed to distinct causes of action).

12

As previously addressed, Plaintiff Feliz Mateo was subjected to adverse employment actions, including but not limited to: (1) constructive discharge, (2) the denial of tips and discriminatory treatment in the assignment of vehicle retrievals, and (3) the denial of breaks and equal access to facilities.[3] Defendant's males employees who were not perceived to be homosexual received more favorable treatment than Plaintiff Feliz Mateo and were not subjected any of the same adverse employment actions, including but not limited to Belfond, Freud, Clotaire, and Orisma. Am. Compl., ECF No. 11, ¶¶ 39, 60, 61.

Plaintiff Feliz Mateo was called homophobic slurs like "gay" and "maricon" ('faggot'), and was mocked by other employees because he was believed to be in a sexual relationship with a man. Am. Compl., ECF No. 11, ¶¶ 83–84. The use of homophobic slurs towards Plaintiff Feliz Mateo provides evidence of Defendant's discriminatory animus on the basis of Plaintiff Feliz Mateo's perceived sexual orientation. Taken as a whole, these facts are sufficient to give rise to an inference of discrimination. Accordingly, Plaintiff Feliz Mateo, at a minimum, has met the more lenient mixed-motive standard for his Title VII discrimination claim. *See Beyer v. Miami-Dade Cty.*, 2019 U.S. Dist. LEXIS 23588, at *76.

## II. Plaintiffs Have Established a *Prima Facie* Case of Hostile Work Environment in Violation of Section 1981 and Title VII

To establish a *prime facie* case of hostile work environment, the Plaintiffs must show (1) that Plaintiffs belonged to a protected group; (2) Plaintiffs were subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller*

---

[3] *See* discussion *supra* Part I.A.

*v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In analyzing whether the conduct was objectively hostile, courts analyze several factors, including (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. *Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339–1140 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Plaintiffs have established each of the above-mentioned elements under Section 1981. Plaintiffs are members of a protected class as individuals of Hispanic race. Am. Compl., ECF No. 11, ¶¶ 3–5. Plaintiffs were subjected to humiliating and isolating conduct on account of their race, including: (1) being denied access to the same privileged as non-Hispanic employees (including access to drinking water, air conditioning, use of elevators, and break time); (2) being subjected to an extremely burdensome workload while non-Hispanic employees were able to rest; (3) being constantly scrutinized and berated to complete vehicle retrievals without regard for their safety; and (4) being threatened with termination and mocked for reporting the discriminatory conduct. Defendant's harassment was extremely intimidating, with Plaintiffs' supervisor physically assaulting Plaintiff De La Rosa in front of others and Defendant openly allowing the use of slurs like "negro" ('nigger') and "negro ladrón" ('thieving nigger'). *See, e.g.*, Am. Compl., ECF No. 11, ¶¶ 55, 68, 76, 80.

Plaintiffs have also established Defendant's liability for the hostile work environment. Defendant was put on actual notice of the discriminatory conduct, as Plaintiffs had made repeated complaints to Defendant's management, including Edson Belfond, the Plaintiffs' supervisor, Cynthia Abugattas, a Human Resources Representative, and Alex Furrer, the General Manager.

Am. Compl., ECF No. 11, ¶¶ 89–94. "Actual notice is established by proof that management knew of the harassment, whereas constructive notice will be found where the harassment was so severe and pervasive that management should have known of it." *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1278.

Similarly, Plaintiff Feliz Mateo has established each element of his Title VII hostile work environment claim. As an individual male, Plaintiff Feliz Mateo is a member of a protected class. Am. Compl., ECF No. 11, ¶ 4. Plaintiff Feliz Mateo was subjected a wide array of discriminatory and harassing conduct on account of his sex, most notably being called homophobic slurs like "gay" and "maricon" ('faggot') and being mocked by other employees because he was believed to be in a sexual relationship with a man.[4] Am. Compl., ECF No. 11, ¶¶ 83–84. As discussed further herein, the use of these slurs, in combination with the Defendant's other adverse actions, are more than sufficient to establish a discriminatorily abusive working environment.[5]

Defendant contends that Plaintiffs' allegations are not sufficiently severe or pervasive enough to state a claim for hostile work environment. Mot. Dismiss, ECF No. 17, pp. 12–14. This argument fails to recognize the seriousness of the racial conduct alleged by the Plaintiffs. The Supreme Court has emphasized that in evaluating whether a working environment is hostile, it is critical to consider "the social context in which particular behavior occurs and is experienced." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81. Defendant's racial harassment of the Plaintiffs materially altered the terms and conditions of their employment by negatively impacting

---

[4] Although Defendant's Motion does not appear to take issue with the similarity in the discriminatory acts alleged in Plaintiff Feliz Mateo's Section 1981 hostile work environment claim and his Title VII hostile work environment claim, Plaintiff nonetheless notes that the Federal Rules allow him to plead the same or similar acts in this manner. FED. R. CIV. P. 8(d)(2) ("A party may set out two or more statements of a claim ... alternatively or hypothetically …. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *id.* 8(d)(3) ("A party may state as many separate claims … as it has, regardless of consistency.").

[5] *See* discussion *supra* Part I.B regarding Defendant's adverse actions taken against Plaintiff Feliz Mateo on the basis of his sex.

15

Plaintiffs' compensation, work assignments, and job performance. Allegations of this nature are sufficient to show a hostile work environment in the race discrimination context. *See Borgella v. Robins & Morton Corp.*, 2022 U.S. Dist. LEXIS 104297, at *9 (finding that plaintiffs' allegations of being subjected more difficult and challenging tasks at work due to their race was sufficient to establish a hostile work environment under Section 1981).

Moreover, Plaintiffs were subjected to the use of racial and homophobic slurs, the use of which are particularly egregious and humiliating. The Eleventh Circuit has found even just a single use of the term "nigger" sufficient to create a hostile work environment. *See Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1285. The fact that these slurs may have been directed to one of the Plaintiffs in particular does not diminish the discriminatory impact on all of the Plaintiffs as members of a racial minority. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (citations omitted) ("[A] harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment.").

Defendant's Motion asserts that Plaintiffs' hostile work environment claims are "largely reconstituted iterations of their disparate treatment claims." Mot. Dismiss, ECF No. 17, pp. 12–13. Plaintiffs' inclusion of discrete acts in their respective hostile work environment claims does not represent a pleading deficiency and Defendant fails to cite any binding authority stating as such. *Id.* While discrete acts alone cannot form the basis of hostile work environment claims, the Eleventh Circuit has recognized that discrete acts can be considered as part of a hostile work environment claim. *See Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117 (a hostile work environment claim depends on "a series of

16

separate acts that collectively constitute one 'unlawful employment practice.'" (internal citation omitted))).

Plaintiffs' hostile work environment claims properly allege the cumulative effect of Defendant's discriminatory acts and the frequency of the racial harassment. "Incidents of harassment 'that continue that continue despite the employee's . . . objections are indicative of a hostile work environment.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1303 (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). Plaintiffs' Amended Complaint contains sufficient factual allegations to put Defendant on notice of Plaintiffs' hostile work environment claims and the grounds upon which they rest. Accordingly, Defendant's Motion to Dismiss the Plaintiffs' hostile work environment claims must also be denied.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Counts I Through III And V Through VIII of Plaintiffs' Amended Complaint, in its entirety.

Dated: Miami, Florida,
December 4, 2023,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiffs*

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Kyle@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on December 4, 2023, on all counsel of record on the service list via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**GORDON REES SCULLY MANSUKHANI**

Robin Taylor Symons
Rsymons@grm.com
Florida Bar No.: 356832
Eric R. Thompson
Ethompson@gordonrees.com
Florida Bar No. 888931
GORDON REES SCULLY MANSUKHANI
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5300
Facsimile: (877) 644-6209

*Counsel for Defendant Setai Hotel Acquisition LLC*