UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-23310-KMW

YOANDRY DE LA ROSA,
BENJAMIN FELIZ MATEO, and
MAXIMO GUTIERREZ,

    Plaintiffs,
vs.

SETAI HOTEL ACQUISITION LLC,

    Defendant.
_____/

**DEFENDANT, SETAI HOTEL ACQUISITION LLC'S
REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS [D.E. #21]**

Defendant, Setai Hotel Acquisition LLC (the "Setai"), by and through the undersigned counsel, hereby files its Reply to the Response in Opposition to Motion to Dismiss (the "Response") [D.E. #21] filed by Plaintiffs, Yoandry De La Rosa ("De La Rosa"), Benjamin Feliz Mateo ("Mateo"), and Maximo Gutierrez's ("Gutierrez") (collectively, "Plaintiffs"), and states the following:

**I.
INTRODUCTION**

In their Response, Plaintiffs: a) fail to address much of the pertinent case law cited in Defendant's Motion to Dismiss; b) unsuccessfully attempt to distinguish other cases cited by Defendant; c) fail to provide case law directly supporting the claims at issue; d) fail to address arguments raised by Defendant; and, e) attempt to incorrectly reframe the pertinent allegations of their Amended Complaint to survive dismissal. Accordingly, the Court should grant Defendant's Motion to Dismiss.

## II.
## MEMORANDUM OF LAW

### A.
### Plaintiffs' Disparate Treatment Discrimination Claims

#### 1.
#### Clarifying the Pleading Requirements

In their Response, Plaintiffs state that they need not satisfy the *McDonnell-Douglas* framework at the pleading stage. Plaintiffs are correct. However, to be clear (and as argued in Defendant's Motion to Dismiss), to support their disparate treatment discrimination claims Plaintiffs **must**, at the pleading stage, allege that they suffered an adverse employment action. *Chin Tuan v. Flatrate Moving Network LLC*, 2020 WL 4606318, *4 (S.D. N.Y.) ("**At the pleading stage**, Title VII[1] 'requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin. As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him.'") (emphasis added) (quoting *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 85 (2d Cir. 2015)); *see also Zachary v. Comprehensive Health Management, Inc.*, 2012 WL 3264899, *2 (11th Cir. 2012) ("Stated another way, an employment discrimination plaintiff **must allege the necessary prima facie elements**, but is not required to satisfy the *McDonnell Douglas* burden shifting analysis.") (emphasis added).

---

[1] As "[t]he elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim," courts analyze "claims under Title VII [] and § 1981 together . . . ." *Eliassaint v. RTG Furniture Corp.*, 551 F.Supp.3d 1293, 1302 (M.D. Fla. 2021) (citing *Fuller v. Edwin B. Stimpson Co.*, 598 F. App'x 652, 653 (11th Cir. 2015); *Harrison v. Belk, Inc.*, 748 F. App'x 936, 941 (11th Cir. 2018)). "Claims of race discrimination under both Title VII and § 1981 require a showing that the employer subjected the employee to an 'adverse employment action.'" *Davis. v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1265-66 (11th Cir. 2021).

**2.**
**Lost Tips Can Be Sufficiently Material to Constitute an Adverse Employment**
**Action, but the Amended Complaint Fails to Allege Such Materiality**

In their Response, Plaintiffs argue that there is a lack of any authority from the Eleventh Circuit supporting the proposition, as set forth in Defendant's Motion, that "[a]lthough the denial of a monetary bonus (like a tip) may constitute an adverse employment action, the potential tips at issue [cannot be] of *de minimis* amount, the deprivation of which cannot rise to the level of an adverse employment action." [D.E. #21, p. 9]; *see also Arafi v. Mandarin Oriental*, 867 F.Supp.2d 66, 72 (D.D.C. 2012). In doing so, Plaintiffs overlook Eleventh Circuit case law cited in their Response.

In *Gillis v. Georgia Department of Corrections*, 400 F.3d 883 (11th Cir. 2005), the Eleventh Circuit addressed a claim by a probation officer that, as a result of discriminatory motives, she received only a three percent (3%) raise rather than a five percent (5%) raise. *Id.* at 886. In determining whether the withholding of the additional two percent (2%) raise constituted an adverse employment action, the *Gillis* Court applied the same standard as set forth in Defendant's Motion:

> [w]e hold that an evaluation that directly disentitles an employee to a raise **of any significance** is an adverse employment action under Title VII. We note that this case does not involve disentitlement to a **de minim[i]s** raise; rather, the denial of the raise at issue here was an employment decision that **significantly affected [plaintiff's] compensation**.

*Id.* at 888 (emphasis added); *see also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.' Conduct that falls short of an ultimate employment decision must meet 'some **threshold level of substantiality** ... to be cognizable under the anti-retaliation clause.'")

(internal citations omitted) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997), *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)) (emphasis added).

Just as was the case in *Arafi*, based upon the allegations of the Amended Complaint, one "cannot conclude that [the] loss of potential tips [at issue] amounts to a materially adverse employment action." *Arafi*, 867 F.Supp.2d at 72. The Amended Complaint fails to distinguish between the amount of tips Plaintiffs claim to have lost as a result of the alleged discriminatory conduct, on the one hand, versus as a result of the alleged violations of the Fair Labor Standards Act (the "FLSA"), on the other.

As discussed in Defendant's Motion, in their Amended Complaint Plaintiffs merely allege - **immediately after** alleging that tips were also diverted from **all valets** (regardless of race) in violation of the FLSA - that "the Defendant's unlawful retention and/or distribution of tips had a significant and material negative impact on the wages that Plaintiffs earned, often resulting in Plaintiffs losing thousands of dollars in tips per week." [D.E. #11, ¶¶49-55]. The Amended Complaint does not allocate which portion of those claimed lost tips resulted from the alleged discriminatory conduct versus the claimed violations of the FLSA, nor is there any allegation elsewhere in the Amended Complaint as to the amount of tips Plaintiffs claim to have lost.

In their Response, Plaintiffs attempt to reframe that particular allegation from the Amended Complaint as directed solely to their discrimination claims, ignoring that: 1) they also claim lost tips as a result of alleged violations of the FLSA; and, 2) that allegation as to the amount of lost tips **immediately follows** Plaintiffs' allegations regarding the tips that they claim **all valets** lost as a result of the alleged FLSA violations. [D.E. #21, p. 10]. A plain reading of the Amended Complaint shows that: 1) the amount of claimed lost tips is not limited to Plaintiffs' discrimination claims; and,

2) thus, the Amended Complaint fails to sufficiently allege that the claimed diversion of those tips constitutes an adverse employment action.

### 3.
### The Claimed Denial of Breaks and Equal Access to Facilities

In their Response, Plaintiffs attempt to distinguish case law cited in Defendant's Motion establishing that the denial of breaks does not constitute an adverse employment action, *i.e.*, *Carter v. Donahue,* 2015 WL 2024844, *5 (M.D. Fla. 2015) and *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008). [D.E. #21, p. 11].

First, Plaintiffs attempt to distinguish these cases by arguing that they were summary judgment (not motion to dismiss) cases. *Id.* Plaintiffs, however, fail to cite to any authority for the proposition that a court cannot determine at the pleading stage that the denial of breaks does not, as a matter of law, constitute an adverse employment action. To the contrary, and as discussed above, Plaintiffs must allege cognizable adverse employment action to withstand a motion to dismiss and whether Plaintiffs have done so is a determination that can be made by this Court at the pleadings stage. *See Chin Tua*, 2020 WL 4606318 at *4.

Plaintiffs further attempt to distinguish Defendant's case law by arguing that the *Carter* Court determined that the denial of a "single break period," rather than the repeated "regular and routine denial of break time," did not constitute an adverse employment action. *Id.* Although the plaintiff in *Carter* complained of the denial of only one particular break, in finding that denial insufficient to constitute an adverse employment action the *Carter* Court cited *Grimsley* for the proposition that an "employee did not suffer adverse employment action when [the] supervisor . . . denied [the employee] **breaks**," among other alleged discriminatory conduct. *Carter*, 2015 WL 2024844 at*5.

Further, although *Grimsley* squarely addressed the repeated denial of breaks, Plaintiffs attempt to reframe the denial of those breaks by conflating them with the discriminatory "occasional[]" assignment of additional tasks also alleged in that case. [D.E. #21, p. 11]. Plaintiffs attempt to confuse the issue, as one has absolutely nothing to do with the other for purposes of Defendant's Motion. For, unlike the alleged "occasional[]" assignment of additional tasks at issue in *Grimsley*, there is no indication in that opinion that the denial of breaks at issue therein – which, again, were found **not** to comprise an adverse employment action – were anything less than "regular and routine." *See Grimsley*, 284 Fed.Appx. at 606, 609. Plaintiffs cannot meaningfully distinguish *Grimsley* nor, as discussed above, *Carter*.

With regard to Plaintiffs' allegation that they were not permitted to use the valet office (framed, in their Response, as a denial of "access to air conditioning and drinking water") and the service elevators, Plaintiffs fail to cite to **any authority** establishing that either of those alleged denials constitutes an adverse employment action. [D.E. #21, pp. 11-12].

Rather, Mateo attempts to support his disparate treatment discrimination claim by asserting that the alleged prohibition against him using the service elevators, "add[ed] further humiliation and embarrassment . . . [because he] was forced to take the stairs even while suffering from a spinal cord injury." [D.E. #21, p. 12]. However, Mateo fails to allege that he ever advised Defendant of any such alleged spinal cord injury, rendering the claimed "further humiliation and embarrassment" irrelevant for purposes of his discrimination claim.

Notably, in their Response, Plaintiffs do not address (and, thus, appear to concede) that - as argued in Defendant's Motion - their allegation that they were not permitted to call out of work or show up late cannot constitute an adverse employment action. [D.E #17, p. 9].

**4.**
**Plaintiffs' Alleged Constructive Discharge**

In short, in their Response Plaintiffs fail to cite to any authority for the proposition that the alleged discriminatory conduct that led to their purported constructive discharge, none of which (as discussed above) rises to the level of an adverse employment action, satisfies the "quite high" threshold to establish a constructive discharge. [D.E. #21, pp. 6-8]; *see also Moore v. San Carlos Park Fire Protection & Rescue*, 2018 WL 3931853, *5 (S.D. Fla .2018).

As discussed in Defendant's Motion, to sufficiently allege a constructive discharge Plaintiffs must allege that their "salary, location or duties" were "so intolerable that a reasonable person in [their] position would have been compelled to resign." *Patrick v. City of Port St. Lucie*, 2007 WL 9702580, *4 (S.D. Fla. 2007); *see also Moore*, 2018 WL 3931853 at *5. The allegations of the Amended Complaint fail to reach that threshold and, in their Response, Plaintiffs fail to provide any authority to the contrary.

Further, with regard to the alleged lost tips (those not claimed to have resulted from the alleged FLSA violations), in their Response Plaintiffs characterize the amount of those tips as "significant" despite the fact that, as discussed above, the Amended Complaint is devoid of any such allegation. [D.E. #21, p. 8]. Plaintiffs' citation to *U.S. Equal Employment Opportunity Commission v. Nice Systems, Inc.*, 2021 WL 9950751, *5-6 (S.D. Fla. 2021) for the proposition that a "significant loss in [] income" can support a constructive discharge claim is, therefore, misplaced. [D.E. #21, p. 8].

**5.**
**Mateo's Disparate Treatment Sexual Discrimination Claim**

In their Response, Plaintiffs concede that, either under a single-motive or mixed-motive theory, Mateo must allege an adverse employment action. [D.E. #21, p 12]; *see also Quigg v.*

*Thomas County School Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). Yet, as discussed in Defendant's Motion, Mateo has failed to allege any such adverse employment action.

First, as discussed above, the alleged denial of tips, breaks and access to the service elevators and valet office, together with the alleged constructive discharge, are insufficient. [D.E. #21, p. 13]. Finally, with regard to the claimed slurs made against Mateo, Plaintiffs have failed to cite to any authority rebutting the authority cited in Defendant's Motion that any such alleged slurs fail, as a matter of law, to allege an adverse employment action. [D.E. #17, p. 10; D.E. #21, p. 13].

**B.
Plaintiffs' Hostile Work Environment Claims**

**1.
De La Rosa and Gutierrez's Hostile Work Environment Claims**

As discussed in Defendant's Motion, the only differences between De La Rosa and Gutierrez's respective disparate treatment discrimination claims and their respective hostile work environment claims are: 1) with regard to each of De La Rosa and Gutierrez, they added an allegation to their hostile work environment claim that they were subjected to "harsher scrutiny and discipline" than their non-Hispanic co-workers; and, 2) additionally, with regard to Gutierrez, he alleges in his hostile work environment claim that on **one occasion** he was "**shoved**" by a supervisor, Edson Belfond ("Belfond"). [D.E. #17, p. 13]. As further noted in Defendant's Motion, "alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim[]." *Kilby-Robb v. Spellings*, 522 F.Supp.2d 148, 164 (D. D.C. 2007).

In their Response, Plaintiffs confirm these minimal differences between those claims.[2] [D.E #21, p. 14]. Plaintiffs also fail to rebut or otherwise address the case law cited in Defendant's Motion

---

[2] In their Response, Plaintiffs also assert that a basis of their Section 1981 hostile work environment claim is their allegation that they were, "threatened with termination and mocked for reporting the

8

establishing that the additional claim that De La Rosa and Gutierrez were subjected to "harsher scrutiny and discipline[3]" than their non-Hispanic employees is insufficient to support a claim for hostile work environment. [D.E. #17, pp. 13-14]. Instead, Plaintiffs cite to *Borgella v. Robins & Morton Corp.*, 2022 U.S. Dist. LEXIS 104297, *9 (S.D. Fla. 2022) and *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), both of which are inapposite as they did not address claims of "harsher scrutiny and discipline."

In attempted support of their hostile work environment claims, Plaintiffs also: 1) assert that they, "were subjected to the use of racial and homophobic slurs;" and, 2) cite to *Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) for the proposition that "a harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment." [D.E. #21, p. 14]. First, in their Amended Complaint, the only one of Plaintiffs to which Plaintiffs claim racial or homophobic slurs were directed is Mateo, **not** De La Rosa or Gutierrez.[4] [D.E. #11, ¶¶79-85]. Further, *Jones* is inapposite as Plaintiffs do not allege, in their Amended Complaint (or claim in their Response, for that matter), that any of those comments were made in either De La Rosa or Gutierrez's presence. *Id.*; *see also*

---

discriminatory conduct." [D.E. #21, p. 14]. Any such allegation, however, does not appear to be contained in the Amended Complaint, as the Amended Complaint does not contain any allegation that Plaintiffs were "threatened with termination or mocked" for reporting the alleged discriminatory conduct to Defendant. [D.E. #11, ¶¶86-94]. Rather, Plaintiffs allege that they were threatened with termination when they complained to Belfond about his alleged discriminatory conduct, not when they reported that alleged conduct to Defendant. *Id.* at ¶¶64.

[3] As noted in Defendant's Motion, Plaintiffs fail to identify, in their Amended Complaint, the alleged "harsher . . . discipline" to which they claim they were subjected. Plaintiffs also fail to do so in their Response.

[4] In its Motion, Defendant does not challenge Mateo's 1981 hostile work environment claim but, rather, only his Title VII hostile work environment claim.

*Jones*, 683 F.3d at 1299 (addressing racial epithets about an ethnic group other than the plaintiff's ethnic group but made in the presence of and, in fact, directed to the plaintiff).

With regard to Gutierrez's claim that (on one occasion) Belfond "shoved" him, Plaintiffs argue that "discrete acts can be considered as part of a hostile work environment claim." [D.E #21, p. 16]. Although that is true, the non-discrete acts that also comprise such a claim must support a hostile work environment claim. As discussed above, the only additional allegation included by Gutierrez in his hostile work environment claim (and not included in his disparate treatment discrimination claim), *i.e.*, that he was subject to "harsher scrutiny and discipline" than his non-Hispanic co-workers, fails to do so.

### 2. Mateo's Tile VII Hostile Work Environment Claim

In their Response, Plaintiffs completely ignore (and, thus, fail to dispute) the point raised in Defendant's Motion as to Mateo's Title VII hostile work environment claim, *i.e.*, the alleged acts upon which that hostile work environment claim is based are **exactly the same** as those upon which Mateo's corresponding disparate treatment discrimination claim is based, which is impermissible. [D.E. #11, ¶¶ 198, 211; D.E. #21, p. 15]; *see also Kilby-Robb*, 522 F.Supp.2d at 164.

**WHEREFORE,** Defendant, Setai Hotel Acquisition LLC, respectfully requests that the Court enter its Order: 1) dismissing Plaintiffs' Amended Complaint; 2) if the Court denies the Motion and does not agree that the deadline for the Setai to respond to Counts IV and IX through XI of the Amended Complaint is extended by the operation of law pending the Court's resolution of the Setai's Motion to Dismiss the remaining Counts, granting the Setai an extension of time of fourteen (14) days following this Court's ruling on the Motion to Dismiss to respond to those Counts; and, 3) granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 11th day of December 2023.

By: *s/ Eric R. Thompson*
Robin Taylor Symons
Rsymons@grm.com
Florida Bar No.: 356832
Eric R. Thompson
Ethompson@gordonrees.com
Florida Bar No. 888931
**GORDON REES SCULLY MANSUKHANI**
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, FL  33131
Telephone: (305) 428-5300
Facsimile:  (877) 644-6209
*Attorneys for Defendant*
*Setai Hotel Acquisition LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys identified on the following Service List.

*s/ Eric R. Thompson*
Eric R. Thompson, FBN 888931

**Service List**
Kyle T. MacDonald, Esq.
Kyle@dereksmithlaw.com
DEREK SMITH LAW GROUP, PLLC
701 Brickell Ave., Suite 1310
Miami, FL 33131
*Attorneys for Plaintiffs*